Barbara BRAWN and Ameriklean,
Inc., Plaintiffs,

v.

Donald COLEMAN and Service Em-
ployees International Union,
Local 254, Defendants.

No. 01–CV–10220–PBS.

United States District Court,
D. Massachusetts.

Aug. 30, 2001.

Richard C. Van Nostrand, Mirick, O'Connell, DeMallie & Lougee, Worcester, MA, for Barbara Brawn, Ameriklean, Inc., Plaintiffs.

Indira Talwani, Segal, Roitman & Coleman, Ira Sills, Segal, Roitman & Coleman, Timothy J. Hatfield, Service Employees International, Union Local 254, Michael J. Muse, Boston, MA, for Donald Coleman, Service Employees International Union, Local 254, Defendants.

## MEMORANDUM AND ORDER

SARIS, District Judge.

Defendants, a union local and its business agent, have removed a state-court action for libel, tortious interference with advantageous business relationship, and intentional infliction of emotional harm pursuant to 28 U.S.C. § 1441. Plaintiffs have moved for remand arguing that there is no basis in the complaint for asserting federal question jurisdiction.

For the reasons stated below, Plaintiffs' motion to remand is *ALLOWED.*

## I. BACKGROUND

Unless otherwise noted, the following facts are drawn from the complaint.[1]

---

1. Although the Plaintiffs amended their complaint following removal, the present motion must be "determined according to the plaintiffs' pleading at the time of the petition for removal." *Pullman Co. v. Jenkins,* 305 U.S. 534, 537, 59 S.Ct. 347, 83 L.Ed. 334 (1939). *See also Ching v. Mitre Corp.,* 921 F.2d 11, 13 (1st Cir.1990) ("An amendment to a complaint *after removal* designed to eliminate the federal claim will not defeat federal jurisdic-

Plaintiff Barbara Brawn ("Brawn"), a resident of South Carolina, is the president and co-owner of Plaintiff AmeriKlean, Inc. ("AmeriKlean"), a South Carolina corporation that performs cleaning and janitorial services. On or about May 1, 2000, AmeriKlean entered into a three-year written contract with United Parcel Service, Inc. ("UPS") to provide cleaning and janitorial services at the UPS facility located in Shrewsbury, Massachusetts.

In response to UPS's decision to engage AmeriKlean (a nonunion contractor) to perform janitorial services, a handbilling campaign was initiated by: Defendant Service Employees International Union, Local 254 ("the Union" or "Local 254"); its business agent, Defendant Donald Coleman ("Coleman"); and others. The handbills contained a number of statements, including: "Scab bosses fired two cleaners for signing union representation cards on May 19, 2000"; "Scab boss told cleaners that unions are not allowed on UPS property"; and "Scab boss refuses to honor area union standards." Another set of handbills accused the Plaintiffs of engaging in "slavery" and "abusing cleaners at United Parcel Service." The Defendants also distributed the following "News Release":

UNFAIR LABOR PRACTICE CHARGE TARGETS SCABS

Cleaning workers Rick Johnson, Carlos Dominguez and Antonio Miranda employed by AmeriKlean a out of state scab contractor hired to provide janitorial services at the UPS facility in Shrewsbury, Mass have charges that are being investigated by the National La-bor Relations Board. After observing unsafe working conditions and being offered substandard wages and benefits they demanded Union representation. Rather then respect the workers human rights they were told to leave by a AmeriKlean scab Boss. They were fired by some kind of dirty scab Boss for signing a Union card! [sic]

(Complaint at ¶ 14.) According to Plaintiffs, these statements are all libelous. "Upon information and belief," Plaintiffs also allege that defendants made these and other false or defamatory statements to UPS "and/or" threatened UPS if it continued to do business with AmeriKlean.

Plaintiff Brawn also alleges that she was personally targeted with threats and other statements that caused her severe emotional distress. For example, Defendants allegedly caused correspondence to be sent to Brawn from a "Minister of Defense of the Latin Mission" which stated that the Latin Mission "will teach you a lesson you won't soon forget." Additional correspondence sent to Brawn contained a "People's Subpoena" ordering Brawn to appear and give testimony before the "Massachusetts Jobs with Justice Workers Rights Board." According to the purported subpoena, failing to appear was done "AT YOUR PERIL." In addition, Defendants distributed a handbill stating that Brawn was "LONG OVERDUE FOR EXTINCTION."

As a cumulative result of these activities, the Plaintiffs allege that AmeriKlean was unable to fulfill its contract with UPS, and the contract was terminated by UPS on July 31, 2000.[2]

---

tion.") (emphasis in original). Thus, only the allegations in the original complaint shall be considered for purposes of this motion.

**2.** In their amended complaint, the Plaintiffs allege that, in addition to the handbilling activities, Defendants planned deliberate acts of sabotage designed to impede AmeriKlean's ability to fulfill its contract with UPS. In particular, Plaintiffs allege that Defendants trashed areas recently cleaned by AmeriKlean and falsely reported to UPS that AmeriKlean had not performed its assigned work. These allegations need not be considered for purposes of this motion. *See Ching,* 921 F.2d at

On January 22, 2001, Plaintiffs commenced an action against Defendants in Massachusetts Superior Court in Suffolk County, Massachusetts. The original complaint contained counts for libel (Count I), tortious interference with advantageous business relationships (Count II), and intentional infliction of emotional distress (Count III). Defendants removed the action to this Court on February 7, 2001. Plaintiffs rejoined with an amended complaint filed on February 13, 2001 and the present motion to remand the case to state court.[3]

## II. LEGAL ANALYSIS

### A. Motion to remand standard

 A party seeking to remove a case to federal court has the burden of demonstrating the existence of federal jurisdiction. *See BIW Deceived v. Local S6*, 132 F.3d 824, 831 (1st Cir.1997). Furthermore, the removal statute should be strictly construed, and any doubts about the propriety of removal should be resolved against the removal of an action. *See*

*Danca v. Private Health Care Sys., Inc.*, 185 F.3d 1, 4 (1st Cir.1999)

Here, the Defendants argue that removal was proper under 28 U.S.C. § 1441(b), which provides in relevant part: "Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties." *Id.* In order to determine whether a claim or right arises under federal law or the Constitution, the courts look first to the "well-pleaded complaint rule."[4] *See BIW Deceived*, 132 F.3d at 831.

### B. Federal question jurisdiction and the "well-pleaded complaint rule"

 The well-pleaded complaint rule "prohibits the exercise of federal question jurisdiction if no federal claim appears within the four corners of the complaint." *Id.* The plaintiff is generally considered the master of his own complaint and can avoid federal question jurisdiction by relying solely on state-law causes of action.

---

13. In any event, there is no federal preemption of a state law claim arising out of vandalism. *See Cranshaw Constr. of New England, L.P. v. Int'l Ass'n of Ironworkers Local 7*, 891 F.Supp. 666, 675 (D.Mass.1995).

3. Although they are not mentioned in the complaint, the events animating this lawsuit have included a handful of interactions with the National Labor Relations Board. On May 23, 2000, UPS filed an unfair labor practice ("ULP") charge against Local 254 for allegedly engaging in unlawful secondary boycott activities. This charge was ultimately withdrawn without prejudice. On August 9, 2000, Local 254 filed ULP charges against AmeriKlean on behalf of three employees who were allegedly discharged in retaliation for their concerted protected activities. The outcome or status of this charge is not apparent from the parties' submissions. Lastly, on February 1, 2001, Local 254 filed a *Bill Johnson's* charge against AmeriKlean for its allegedly

baseless initiation of the present action in retaliation for Defendants' exercising rights protected by the National Labor Relations Act. *See Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 744, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983) (holding that an employer's filing of a baseless lawsuit against an employee in retaliation for that employee's exercise of his protected rights constitutes an unfair labor practice). This charge is still pending.

4. Although the case initially could have been brought in federal court as a diversity matter, *see* 28 U.S.C. § 1332, the Defendants cannot remove the action on that basis because the Defendants both reside in Massachusetts. *See id.* § 1441(b) (action founded on diversity "shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.").

*See Danca,* 185 F.3d at 4 ("Plaintiff has the prerogative to rely on state law alone although both federal and state law may provide a cause of action."); *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). Thus, a "case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption ...." *Williams,* 482 U.S. at 393, 107 S.Ct. 2425 (emphasis in original). *See also Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) ("Federal pre-emption is ordinarily a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court."). "The fact that a defendant might ultimately prove that a plaintiff's claims are pre-empted under the NLRA does not establish that they are removable to federal court." *Williams,* 482 U.S. at 398, 107 S.Ct. 2425.

An examination of the complaint reveals that no federal claim appears on the face of the complaint. Defendants do not dispute this. Instead, they argue that Plaintiffs' complaint is subject to the two interrelated exceptions to the well-pleaded complaint rule: the artful pleading rule and the doctrine of complete preemption.

**C. Artful Pleading Exception**

 A plaintiff may not avoid removal by artful pleading which "omit[s] to plead necessary federal questions in a complaint." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 12, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). The artful pleading doctrine "empowers courts to look beneath the face of the complaint to divine the underlying nature of a claim, to determine whether the plaintiff has

sought to defeat removal by asserting a federal claim under state-law colors, and to act accordingly." *BIW Deceived,* 132 F.3d at 831. If the claim appears to be federal in nature, the court "must recharacterize the complaint to reflect that reality and affirm the removal despite the plaintiff's professed intent to pursue only state law claims." *Id.* "[T]he artful pleading doctrine permits a district court to recharacterize a putative state-law claim as a federal claim when a review of the complaint, taken in context, reveals a colorable federal question within a field in which state law is completely preempted." *Id.* at 832.

**D. Complete preemption doctrine**

 "Where a claim, though couched in the language of state law, implicates an area of federal law for which Congress intended a particularly powerful preemptive sweep, the cause is deemed federal no matter how pleaded. This exception to the well-pleaded complaint rule is called 'complete preemption.'" *Danca,* 185 F.3d at 4 (citations omitted). In such cases, "a plaintiff may not, by the expedient of artful pleading, defeat a defendant's legitimate right to a federal forum." *BIW Deceived,* 132 F.3d at 824.

**E. The National Labor Relations Act and the law of unlawful secondary pressure**

Although the amended complaint asserts only state-law causes of action, defendants argue that federal question jurisdiction exists because the allegation (upon information and belief) that Defendants "threatened UPS if it continued to do business with AmeriKlean" (Compl. at ¶ 27) is conduct that is arguably prohibited by § 8(b)(4) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(b)(4).[5]

---

5. Section 8(b)(4) of the NLRA is a prohibition on so-called secondary boycotts that, *inter*

When state-law claims arise from activity that is arguably regulated by § 7 or § 8 of the NLRA, both state and federal courts "must defer to the exclusive competence of the NLRB if the danger of state interference with national labor policy is to be averted." *Chaulk Servs., Inc. v. Massachusetts Comm'n Against Discrimination,* 70 F.3d 1361, 1364 (1st Cir.1995), *cert. denied,* 518 U.S. 1005, 116 S.Ct. 2525, 135 L.Ed.2d 1049 (1996); *Cf. San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 246, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959) (holding that the NLRA preempts state-law claims based on conduct that is "arguably within the compass of § 7 or § 8 of the Act").

 Section 8(b)(4) prohibits coercive or threatening intervention by a union in a business's commercial relations with its customers or suppliers. Peaceful persuasion is not unlawful. *Teamsters v. Morton,* 377 U.S. 252, 261, 84 S.Ct. 1253, 12 L.Ed.2d 280 (1964). Thus, under the *Garmon* preemption doctrine, a state law claim for tortious interference with advantageous business relationships may be preempted if it is premised on coercive or threatening conduct that falls within the scope of § 8(b)(4). *See Intercity Maintenance Co. v. SEIU Local 254,* 62 F.Supp.2d 483, 501 (D.R.I.1999), *aff'd in relevant part,* 241 F.3d 82 (1st Cir.2001), *petition for cert. filed,* 70 U.S.L.W. 3036 (U.S. May 14, 2001) (No. 00–1764).

Plaintiffs contend that there is no federal avenue of relief because Defendants did not engage in any conduct which would constitute illegal secondary activity. Instead, Plaintiffs contend that the conduct about which they complain was entirely primary. On the other hand, Defendants fairly point out that the complaint alleges that they directly threatened UPS to induce them to terminate the contract. *See Intercity Maintenance Co. v. SEIU Local 254,* 241 F.3d 82, 86 (1st Cir.2001) (holding that threat to picket a secondary employer unless it ceased doing business with the primary employer constituted improper secondary activity), *petition for cert. filed,* 70 U.S.L.W. 3036 (U.S. May 14, 2001) (No. 00–1764). However, in their briefs Plaintiffs expressly eschew any claim for tortious interference with contract based on threats.[6] *See Williams,* 482 U.S. at 399, 107 S.Ct. 2425 (holding that plaintiff may, "by eschewing claims based on federal law, choose to have the cause heard in state court.").

No matter how Plaintiffs' claims are characterized, the *Garmon* preemption defense should not be conflated with the doctrine of complete preemption, which provides a rare exception to the well-pleaded complaint rule of federal question jurisdiction. *See Williams,* 482 U.S. at 398, 107 S.Ct. 2425 ("The fact that a defendant might ultimately prove that a plaintiff's claims are pre-empted under the NLRA does not establish that they are removable to federal court."); *Metropolitan Life,* 481 U.S. at 66, 107 S.Ct. 1542 ("[E]ven an 'obvious' pre-emption defense does not, in most cases, create removal

---

*alia,* makes it an unfair labor practice for a union or its agents to "threaten, coerce, or restrain any person … where … an object thereof is … forcing or requiring any person to cease … doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees …." 29 U.S.C. § 158(b)(4).

**6.** The Union submitted a copy of the charge submitted by UPS pursuant to Section 8(b)(4) which alleges that on May 23, 2000 the union induced employees of UPS to engage in a strike or refuse to perform services to force UPS to stop doing business with AmeriKlean. Neither the complaint nor the amended complaint contains these allegations.

jurisdiction."). As the First Circuit emphasized in *Danca*, complete preemption and a defense of federal preemption are analytically distinct. *See* 185 F.3d at 4–5 (analyzing the distinction in the context of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*); *see also Dukes v. U.S. Healthcare*, 57 F.3d 350, 354–55 (3d Cir.) (same), *cert. denied*, 516 U.S. 1009, 116 S.Ct. 564, 133 L.Ed.2d 489 (1995).

■ In order to determine whether remand should be allowed, the Court must determine if Congress evinced an intention to completely preempt claims falling within the scope of NLRA § 8(b)(4). *See Metropolitan Life*, 481 U.S. at 65, 107 S.Ct. 1542 (in the absence of explicit direction from Congress, a court should be "reluctant to find that extraordinary pre-emptive power ... that converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule."). Under the First Circuit's test for determining whether there is complete preemption, the Court must find: "that Congress intended federal law to occupy the whole of a regulatory field; that federal judicial power properly extends to actions originally filed in state courts to the extent that they touch upon that field; and that the exercise of such federal power does not offend principles of federalism." *BIW Deceived*, 132 F.3d at 832–33 (citing *Franchise Tax Bd.*, 463 U.S. at 23, 103 S.Ct. 2841). Other courts have deployed a similar analysis, which inquires: 1) whether the federal law provides a civil remedy analogous to the state law claim; and 2) whether congress clearly manifested an intention to make preempted state law claims removable to federal court. *See Goepel v. Nat'l Postal Mail Handlers Union*, 36 F.3d 306, 311 (3d Cir.1994), *cert. denied*, 514 U.S. 1063, 115 S.Ct. 1691, 131 L.Ed.2d 555 (1995). *See also Hart v. Bayer Corp.*, 199 F.3d 239, 245–46 (5th Cir. 2000) (applying similar three-prong analysis); *Schmeling v. NORDAM*, 97 F.3d 1336, 1343–45 (10th Cir.1996) (applying similar two-prong analysis).

■ One factor militates in favor of complete preemption: federal law provides an analogous (although not identical) civil remedy available to Plaintiffs for the allegations that the Union threatened UPS into cancelling its contract with the Defendants. While most violations of sections 7 and 8 of the NLRA fall within the exclusive primary jurisdiction of the National Labor Relations Board and entail no private cause of action, the secondary boycott prohibitions of NLRA § 8(b)(4) are actionable in a claim for money damages under section 303 of the Labor Management Relations Act ("LMRA"), which provides:

> (a) It shall be unlawful, for the purpose of this section only, in an industry or activity affecting commerce, for any labor organization to engage in any activity or conduct defined as an unfair labor practice in section 158(b)(4) of this title. (b) Whoever shall be injured in his business or property by reason or [sic] any violation of subsection (a) of this section may sue therefor in any district court of the United States subject to the limitations and provisions of section 185 of this title without respect to the amount in controversy, or in any other court having jurisdiction of the parties, and shall recover the damages by him sustained and the cost of the suit.

29 U.S.C. § 187. Section 303 has been interpreted, however, to provide no remedy against individual defendants, such as Coleman, who are alleged to have harmed the plaintiff by engaging in boycott activity directed at a secondary target, such as UPS. *See Charles D. Bonanno Linen Serv., Inc. v. McCarthy*, 708 F.2d 1, 6 (1st Cir.), *cert. denied*, 464 U.S. 936, 104 S.Ct.

346, 78 L.Ed.2d 312 (1983). In addition, a claim of secondary boycott under LMRA § 303 does not address boycott activity directed only at the primary target. *See Local 978, United Bhd. of Carpenters & Joiners of Am. v. Markwell*, 305 F.2d 38, 44 (8th Cir.1962).

Where Defendants' argument fails is on the second factor. This factor—evidence of clear congressional intent—is the key determination:

> Although the analytical frameworks used by various federal courts to determine complete preemption differ, all center around a similar goal: to determine whether there exists a congressional intent in the enactment of a federal statute not just to provide a federal defense to a state created cause of action but to grant a defendant the ability to remove the adjudication of the cause of action to a federal court by transforming the state cause of action into a federal cause of action.

14B Wright, Miller and Cooper, *Federal Practice and Procedure* § 3722.1, at 557 (3d ed.1998). The Defendants bear the burden of establishing the factors favoring removal jurisdiction; yet, in arguing their position, they have provided nothing in the way of analysis or legislative history to demonstrate Congress' intent on the issue.

A comparison between the language of LMRA § 303 and the federal statutes that have been found to provide a basis for complete preemptions signals that Congress did not intend state law claims to be removable to federal court. For example, § 301 of the LMRA, 29 U.S.C. § 185, has long been recognized to create federal jurisdiction over any state law claim attempting to enforce the provisions of a collective bargaining agreement. *See Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists*, 390 U.S. 557, 560, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968). That provision reads in relevant part:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, *may be brought in any district court of the United States having jurisdiction of the parties*, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a) (emphasis added). In *Williams*, a case alleging breach of individual employment contracts, a unanimous Supreme Court held that the complete preemption doctrine "is applied primarily in cases raising claims pre-empted by § 301 of the LMRA," that is, those claims involving the violation and enforcement of collective bargaining agreements. *Williams*, 482 U.S. at 394, 107 S.Ct. 2425.[7]

In contrast, the statutory language of § 303 differs from that of § 301 in that it explicitly contemplates that causes of action for unlawful secondary boycott activity would be brought in state courts as well as federal courts. *Compare* 29 U.S.C. § 187(b) (Whoever shall be injured ... by reason or [sic] any violation of [§ 187(a) ] may sue therefor in any district court of the United States ..., *or in any other court having jurisdiction of the parties*)

---

**7.** The First Circuit has held that state-law claims relating to the union's duty of fair representation ("DFR"), *see Vaca v. Sipes*, 386 U.S. 171, 183, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), are subject to preemptive force akin to complete preemption under LMRA § 301. *See BIW Deceived*, 132 F.3d at 831. This comes as little surprise since DFR claims are often asserted hand-in-hand with a claim under § 301. *See, e.g., White v. White Rose Food*, 237 F.3d 174, 178–79 (2d Cir.2001) (analyzing elements of a "hybrid § 301/DFR claim").

(emphasis added), with *id.* § 185(a) ("Suits for violation of contracts between an employer and a labor organization ... may be brought *in any district court of the United States having jurisdiction of the parties*") (emphasis added). The choice to utilize different language in the two closely related provisions indicates that Congress intended a broader preemptive force to apply only to claims falling within the scope of § 301.

Without any more explicit guidance to the contrary—either in the statute or case law—this Court concludes that LMRA § 303 does not have a preemptive force so extraordinary that it converts a complaint alleging only a state-law cause of action into one stating a federal claim for purposes of the well pleaded complaint rule. A handful of district courts have reached the same conclusion. *See East Coast Steel Erectors, Inc. v. Int'l Assoc. of Bridge, Structural and Ornamental Iron Workers, Local 7,* Civ. A. No. 90–10314–WF, 1990 WL 85505, at *4–5 (D.Mass. June 15, 1990) (Wolf, J.); *Lowe Excavating Co. v. International Union of Operating Engineers, Local No. 150,* 1988 WL 64108, *1, No. 88 C 1464, 1988 U.S. Dist. Lexis 5786, at *3–4 (N.D. Ill. June 10, 1988); *Adolph Coors Co. v. Sickler,* 608 F.Supp. 1417, 1425 (C.D.Cal.1985) (finding no complete preemption where alleged tort involved a threat of violence). *See generally Metropolitan Life,* 481 U.S. at 67–69, 107 S.Ct. 1542 (Brennan, J., concurring) ("the prudent course for a federal court that does not find a clear congressional intent to create removal jurisdiction will be to remand the case to state court."). The only significant authority to the contrary is a Fifth Circuit decision issued prior to the Supreme Court's decisions in *Williams* and *Franchise Tax Bd.,* both of which make clear the distinction between ordinary conflict preemption and complete preemption. *See Universal Communs. Corp.*

*v. Burns,* 449 F.2d 691, 693 (5th Cir.1971) (accepting federal jurisdiction over state law claims that essentially allege a cause of action under LMRA § 303). *Cf. also Cunningham v. Dixon,* 700 F.Supp. 20, 21 (S.D.Ohio 1987) (holding that plaintiffs could not avoid stating federal question under § 303 by resorting to "artful pleading").

### E. Complete preemption under LMRA § 301

In a late-breaking turn of events, Defendants, through their new (and very able) counsel, have advanced a wholly different theory of removal jurisdiction. They contend that complete preemption under LMRA § 301 is applicable because Plaintiffs' libel claim requires the interpretation of a collective bargaining agreement.

More specifically, Defendants point to the allegation that the statement "Scab boss refuses to honor area union standards" (Compl. at ¶¶ 10.C and 11) constitutes libel. From this, Defendants argue that the Plaintiffs must prove as an element of their claim that this statement is false, which entails proof that Plaintiffs honored area union standards. Since area union standards would be gleaned from examining the collective bargaining agreements that establish those standards, Defendants argue that Plaintiffs' claim is preempted by § 301 because "resolution of [the] state-law claim [would] depend[ ] upon the meaning of a collective-bargaining agreement ...." *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 405–06, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988).

As an initial matter, it is uncertain whether the libel claim presented here would provide a basis for complete preemption under § 301, which encompasses only claims involving the violation and enforcement of collective bargaining agree-

ments. *See Williams,* 482 U.S. at 394, 107 S.Ct. 2425 (rejecting argument that plaintiff's individual employment contract claims were removable to federal court on the theory that they were preempted by § 301); *Textron Lycoming Reciprocating Engine Div., AVCO Corp. v. United Automobile Workers of America,* 523 U.S. 653, 658, 118 S.Ct. 1626, 140 L.Ed.2d 863 (1998) (declining federal jurisdiction over union's fraud-in-the-inducement claim that was not a claim "for violation of [collective bargaining] contracts.") (quoting 29 U.S.C. § 185). *Cf. Box Tree South, Ltd. v. Bitterman,* 873 F.Supp. 833, 840 (S.D.N.Y.1995) (holding that § 301 does not provide a basis for removal in the absence of an alleged violation of a collective bargaining agreement).

Moreover, because the plaintiffs are not and never have been a party to the collective bargaining agreements in question, there is a diminished basis for asserting a § 301 preemption defense. *See Martin v. Shaw's Supermarkets, Inc.,* 105 F.3d 40, 42 (1st Cir.) (holding that § 301 preemption applies only to "a real interpretive dispute and not merely a pretended dispute."), *cert. denied,* 522 U.S. 818, 118 S.Ct. 69, 139 L.Ed.2d 30 (1997). The preemption defense may also falter because one could characterize the libel claim as merely requiring "consultation" of the collective bargaining agreements, rather than actual interpretation of disputed contract provisions. *See Livadas v. Bradshaw,* 512 U.S. 107, 124, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994) ("[T]he bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be

extinguished") (citing *Lingle,* 486 U.S. at 413 n. 12, 108 S.Ct. 1877).

■ In any event, this § 301 conundrum need not be resolved here. Even if the allegation that the defendants libelously stated that the plaintiffs refused to honor area union standards creates a colorable basis for removal, the plaintiffs have expressly waived any claim based on the statement. Once this claim is abandoned, this Court has the discretion to remand the remaining claims—all of which arise under state law—to state court. *See* 28 U.S.C. § 1367(c). Thus, to the extent the plaintiffs' waived claims created a basis for removal, I exercise my discretion in favor of remand.

**F. Postscript**

It is important to emphasize that this Court's ruling on the existence of removal jurisdiction does not reflect in any way on the merits of a federal preemption defense and does not prejudice the Defendants' ability to raise their preemption defenses in state court. As the Supreme Court noted in *Metropolitan Life,* "even an obvious pre-emption defense does not, in most cases, create removal jurisdiction." 481 U.S. at 66, 107 S.Ct. 1542 (quotations omitted). Federal labor law "recognizes that labor disputes often create friction and unease among the warring parties. Given the realities of these struggles, much of the consequent strife is not actionable in a court of law." *Intercity Maintenance Co.,* 62 F.Supp.2d at 493 .[8]

Like the Supreme Court in *Farmer v. United Bhd. of Carpenters & Joiners of*

---

8. Plaintiffs' claim for interference with advantageous business relations ultimately may be vulnerable to a preemption defense, but this is a tricky inquiry dependent on a better development of the factual record. Non-violent primary activity is fully protected by the NLRA and cannot form the basis of a cause of action under state law. *See Garner v. Team-*

*sters Local 776,* 346 U.S. 485, 500–01, 74 S.Ct. 161, 98 L.Ed. 228 (1953). Likewise, federal labor law preempts state-law claims arising from peaceful secondary conduct, be it lawful or unlawful under the NLRA. *See BE & K Constr. Co. v. United Bhd. of Carpenters & Joiners of Am.,* 90 F.3d 1318, 1330 (8th Cir. 1996) (holding that state-law claims based on

*Am., Local 25*, 430 U.S. 290, 305 n. 13, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977), I trust the state trial court to be sensitive to the need to minimize the potential to interfere with the federal scheme of labor relations.

## III. CONCLUSION AND ORDER

For the reasons stated above, the Plaintiffs' Motion to Remand (Docket No. 7) is *ALLOWED*.

allegations of illegal secondary activity are preempted); *Morton,* 377 U.S. at 259–60, 84 S.Ct. 1253 (same with regard to state-law claims based on lawful, peaceful secondary activity). On the other hand, there is no preemption of state-law claims arising from allegations of violence, threats of violence, or vandalism. *See United Automobile Workers v. Russell,* 356 U.S. 634, 645–56, 78 S.Ct. 932, 2 L.Ed.2d 1030 (1958) (holding that state tort claim for wrongful interference with a lawful business relationship was not preempted where there were threats of violence); *Cranshaw Constr.,* 891 F.Supp. at 675 (same with regard to claims based on vandalism). *But cf. United Mine Workers v. Gibbs,* 383 U.S. 715, 729, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (holding that amount of damages recoverable must be "strictly confined to the direct consequences of [the violent, threatening, or maliciously libelous] conduct, and does not include consequences resulting from associated peaceful picketing or other union activity."). Also, the scope of Plaintiffs' claims for defamation and intentional infliction of emotional harm may be curtailed by considerations of federal labor policy. *See Linn v. United Plant Guard Workers Local 114,* 383 U.S. 53, 64–65, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966) (limiting state remedies for defamation to claims where plaintiff can demonstrate "actual malice" and measurable economic damages); *Farmer,* 430 U.S. at 305–06, 97 S.Ct. 1056 (holding that a state claim of intentional infliction of emotional distress was not preempted but warning that the "potential for undue interference with federal [labor] regulation would be intolerable if state tort recoveries could be based on the type of robust language and clash of strong personalities that may be commonplace in various labor contexts.").