Rudolph CARDILLO, Rose Cardillo, Dennis Cardillo, and Cardillo's, Inc., Plaintiffs,

v.

Edward T. CARDILLO, The Town of Johnston, The Town of Johnston Police Department, The Town of Johnston Police Chief Richard Tamburini, and The Town of Johnston Finance Director Barbara Joncas, Defendants.

Edward T. Cardillo, Plaintiff,

v.

Rose P. Cardillo, individually and as Trustee of the Alfred A. Cardillo Rev. Inter Vivos Trust, dated May 25, 1989, as amended, and in her capacity as an Officer and Director of each of Cardillo Bros., Inc., Rucar, Inc., and Cardillo's, Inc.; Rudolph Cardillo, individually and in his capacity as an Officer and Director of each of Cardillo Bros., Inc., Rucar, Inc., and Cardillo's, Inc.; John Doe; Joseph Doe; and Jane Doe, Defendants.

Nos. C.A.04–027S, C.A.04–060S.

United States District Court, D. Rhode Island.

March 23, 2005.

Gary E. Blais, Esq., Kurt M. Hayes, Esq., Providence, RI, for Rudolph Cardillo, Dennis Cardillo, Rose Cardillo And Cardillo's, Inc.

Frank R. Saccoccio, Esq., Johnston, RI, for Rose Cardillo.

Edward R. DiPippo, Esq., Cranston, RI, for Rudolph Cardillo.

Stephen M. Robinson, Esq., Mary Ann F. Carroll, Esq., Michael P. Robinson, Esq., Law Office of Stephen M. Robinson, Providence, RI, for Edward T. Cardillo.

Marc DeSisto, Esq., Kathleen M. Daniels, Esq., DeSisto Law, Providence, RI, for Town of Johnston, Johnston Police Dept., Richard Tamburini, and Barbara Joncas.

## DECISION AND ORDER

SMITH, District Judge.

Before this Court are three motions arising out of a bitter family dispute involving conspiracy theories, allegations of police misconduct, and a salvage yard. Specifically, this Court is asked to decide a motion to dismiss and a motion for judgment on the pleadings in a case now pending before this Court, as well a motion for Rule 11 sanctions arising out of a companion case that this Court previously remanded to state court. While the procedural history of these cases is somewhat complex, the issues presented are not. Edward Cardillo ("Edward") alleges that his aunt and uncle, Rose and Rudolph Cardillo ("Rose and Rudolph"), wasted corporate assets conveyed to him by another uncle, and that they deprived him of his interest in certain real estate also conveyed to him. Almost four years after Edward filed his Complaint, Rose and Rudolph removed the case to federal court. For obvious reasons, this Court found such removal to be improper, remanded the case to Rhode Island Superior Court, and allowed Edward to bring a motion for Rule 11 sanctions. Edward's original filing was

procedurally inadequate and was rejected by this Court. He has now re-filed this motion in the form of a Motion for Reconsideration and Award of Attorneys' Fees Pursuant to Rule 11. Meanwhile, Rose and Rudolph, together with Edward's brother, Dennis, and the family salvage yard business, Cardillo's, Inc., filed a separate action against Edward, the Town of Johnston, the Town of Johnston Police Department, and several town officials, alleging violations of their federal constitutional rights and state law. Edward subsequently filed a Motion to Dismiss and the remaining defendants filed a Motion for Judgment on the Pleadings. For the reasons discussed below, this Court treats the dispositive motions as motions for summary judgment, and grants the relief requested therein with prejudice as to all federal claims, and without prejudice as to the state law claims. In addition, because the removal of the state court action nearly four years after its filing was so flagrantly baseless, Edward's Motion for Reconsideration and Award of Attorneys' Fees Pursuant to Rule 11 is also granted.

### I. Background

#### Case 04–60

#### "Edward T. Cardillo v. Rose P. Cardillo, et al."

In May 2000, Edward instituted an action (Case 04–60) in the Rhode Island Superior Court against Rose and Rudolph for an accounting with respect to corporate assets conveyed to him by his deceased uncle, Alfred A. Cardillo ("Alfred"), which were alleged to have been wasted by Rose and Rudolph;[1] for partition of the real estate conveyed to him by Alfred;[2] and

---

**1.** According to Edward, the assets conveyed to him by Alfred consist of a 25% ownership interest in Cardillo Bros., Inc., a salvage yard. (*See* Def.'s Mem. Supp. Mot. Dismiss at 3.)

**2.** Edward contends that Alfred also provided for the conveyance of a 25% interest in certain real estate located at 1757 Plainfield Pike in Johnston, Rhode Island, as evidenced by a

406

for compensatory damages. On December 18, 2003, Rose and Rudolph sought leave to bring a counterclaim against Edward, alleging that Edward had interfered with business profits and licensing, and had wasted corporate assets. This motion was denied by the Rhode Island Superior Court on February 4, 2004, apparently because it was made on the eve of trial and nearly four years after the suit had been filed, and because Rose and Rudolph, together with others, had initiated a separate action, Case 04–27, seeking much the same relief. That separate suit was timely removed to this Court (as further discussed below). On February 25, 2004, several months prior to the start of the state court trial set for May 17, 2004, Rose and Rudolph removed Edward's state court action (which had been pending for nearly four years) to this Court, Case 04–60. On March 25, 2004, Edward brought a Motion to Remand the action to Superior Court, claiming that the action raised strictly matters of state law. On March 30, 2004, Rose and Rudolph brought a Motion to Consolidate Case 04–60 with Case 04–27.

On July 8, 2004, this Court heard arguments on Edward's Motion to Remand and Rose's and Rudolph's Motion to Consolidate. This Court issued a ruling from the bench, finding "absolutely no authority or basis" for Rose's and Rudolph's removal of Case 04–60 to this Court. Citing the multiple-year delay in filing for removal and their failure to cite any legal basis in support of removal, this Court granted Edward's Motion to Remand to Superior Court, thereby mooting Rose's and Rudolph's Motion to Consolidate. (Tr. of Hr'g, 7/8/04, *Cardillo v. Cardillo*, C.A. 04–027S, C.A. 04–60S (hereinafter, "Tr. of

Hr'g, 7/8/04").) At the hearing, this Court also stated that it would "entertain" a motion by Edward for sanctions for fees associated with defending the Motion to Consolidate and filing a Motion to Remand, and requested that Edward submit an affidavit with his costs and fees associated with the Motion to Remand. On July 16, 2004, Edward responded to the Court's request by submitting supporting affidavits and an itemization of attorneys' fees relating to his filing of the Motion to Remand.

On September 3, 2004, this Court denied Edward's Rule 11 Motion for attorneys' fees on procedural grounds, finding no legal authority, absent a separate motion by Edward conforming with Rule 11, to support imposition of sanctions for attorneys' fees. On September 9, 2004, Edward filed a Motion for Reconsideration and Award of Attorneys' Fees Pursuant to Rule 11, bringing a formal motion for attorneys' fees pursuant to Rule 11 and requesting that this Court revisit its decision to deny these fees.

Case 04–27

*"Rudolph Cardillo, et al. v. Edward T. Cardillo, et al."*

On December 18, 2003, Rose, Rudolph, Dennis (Edward's brother), and Cardillo's, Inc.,[3] (collectively, the "Cardillos") instituted an action in Rhode Island Superior Court against Edward, together with the Town of Johnston, the Town of Johnston Police Department, the Town of Johnston Police Chief Richard Tamburini, and the Town of Johnston Finance Director Barbara Joncas (collectively, "the Town") al-

---

deed to him, dated September 29, 1994. (*See* Def.'s Mem. Supp. Mot. Dismiss at 2.)

**3.** According to Edward, the corporate assets of Cardillo Bros., Inc., were eventually trans-

ferred to a corporation known as Rucar, Inc., and then to a corporation known as Cardillo's, Inc. (*See* Def.'s Mem. Supp. Mot. Dismiss at 3.)

leging violations of state and federal law.[4] Shortly thereafter, on February 2, 2004, the Town timely removed Case 04–27 to this Court. On March 9, 2004, Edward brought a Motion to Dismiss the Cardillos' action. On March 24, 2004, following a hearing, this Court issued a bench decision denying the Cardillos' Motion for a Preliminary Injunction against Edward and the Town (collectively, the "Defendants"). On April 15, 2004, the Town brought a Motion for Judgment on the Pleadings. On July 8, 2004, in addition to hearing arguments on Edward's Motion to Remand Case 04–60 to Superior Court, this Court heard arguments on Edward's Motion to Dismiss and the Town's Motion for Judgment on the Pleadings.

## II. Summary Judgment Standard

At the July 8, 2004 hearing, Edward asked this Court to convert his Motion to Dismiss to a Motion for Summary Judgment, in light of the affidavits submitted by himself and Rudolph.[5] Under Rule 12 of the Federal Rules of Civil Procedure, if this Court permits the introduction of extraneous matter on a motion to dismiss, pursuant to Rule 12(b)(6), and/or a motion for judgment on the pleadings, pursuant to Rule 12(c), then the motions "shall be treated as [motions] for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed.R.Civ.P. 12 advisory committee's note. Because this Court has received affidavits from both parties, this Court may, pursuant to Rule 12, convert Edward's Motion to Dismiss, together with the Town's Motion for Judgment on the Pleadings, to motions for summary judgment.[6]

4. In Case 04–27, the Cardillos allege that Edward and the Town violated their constitutional rights by conspiring to have Dennis falsely arrested and imprisoned, to remove corporate assets, and to deprive the salvage yard business of licensing. The Cardillos also allege several state law claims for false arrest and imprisonment, trespass, assault, slander, and libel against Edward and the Town. (Pls.' Compl. at 1–15.)

5. At the July 8, 2004 hearing, the Town stated that it was also amenable to its Motion for Judgment on the Pleadings being treated as a Motion for Summary Judgment. (Tr. of Hr'g, 7/8/04.)

6. At the July 8, 2004 hearing, this Court expressed some concern about treating Defendants' motions as motions for summary judgment, noting that the Cardillos had not been able to take the testimony of Police Chief Richard Tamburini, who was unavailable for the injunction hearing on March 24, 2004. The Town argued that Tamburini's testimony was not required, because Rudolph provided testimony at the injunction hearing as to what Tamburini would have testified had he been available (i.e., Tamburini told Rudolph that there was little the police could do for him— that it was a "civil matter"), and that such testimony did not raise any allegations of impropriety. Upon review of Rudolph's testimony, this Court agrees with the Town that "the record is pretty clear as to what that testimony would be," and that such testimony is insufficient to establish the requisite connection between Edward and the Town. (Tr. of Hr'g, 7/8/04; Tr. of Hr'g, 3/24/04, Cardillo v. Cardillo, C.A. 04–027S ("Tr. of Hr'g, 3/24/04").) In addition, the Cardillos could have deposed Chief Tamburini after the hearing if they truly believed he had more to say. They did not do so. Therefore, notwithstanding the Cardillos' arguments to the contrary, this Court finds that Chief Tamburini's failure to provide testimony at the July 8, 2004 hearing does not prevent this Court from treating the Defendants' motions as motions for summary judgment.

In addition, because the parties in this case presented affidavits prior to the July 8, 2004 hearing, and because the parties had the opportunity to be heard at such hearing, this Court finds that Federal Rules of Civil Procedure Rule 12's requirement that both parties be given a reasonable opportunity to "submit affidavits and extraneous proofs," in order to

Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). In considering the motion, the Court must "view all facts and draw all inferences in the light most favorable to the nonmoving party." *Reich v. John Alden Life Ins. Co.*, 126 F.3d 1, 6 (1st Cir. 1997) (citing *Continental Cas. Co. v. Canadian Universal Ins. Co.*, 924 F.2d 370, 373 (1st Cir.1991)).

## III. *Analysis*

### A. *The Cardillos' § 1983[7] and § 1985[8] Claims*

In their Second Amended Complaint, the Cardillos allege that Edward acted in concert with the Town to "destroy" Cardillo's, Inc., deprive Dennis of his constitutional rights, and deprive Rudolph of the fruits of his business endeavors in violation of 42 U.S.C. § 1983. (Pls.' Compl. at 3–4.) Specifically, the Cardillos allege that Edward had Dennis falsely arrested based on untrue statements "with the assistance of the Johnston Police Department"; caused corporate assets to be removed wrongfully from the property at issue "with the support and guidance of individual law enforcement officers of the Johnston Police Department"; and conspired with the Town of Johnston to deny renewal of the salvage yard's business license. (*Id.* at 4.) In order to overcome Edward's and the Town's respective motions on the § 1983

claims in this case, the Cardillos must, as this Court explained at the injunction hearing, "allege facts sufficient to demonstrate that [Edward] acted under color of state law" to deprive the Cardillos of their constitutional rights, and that Edward's actions "were somehow sanctioned by the Town of Johnston through some policy or procedure." (Tr. of Hr'g, 7/8/04.)

### 1. *Edward's Liability Under § 1983*

■ Edward argues in his Motion to Dismiss that he never acted under the color of state law in any capacity. In the first place, Edward states that he is not a police officer, and neither had state authority nor acted as if he had such authority. (Def.'s Mem. Supp. Mot. Dismiss at 7–8.) Contrary to the Cardillos' contention that Edward is "employed as the Chief Automobile Mechanic for the Johnston Police Department," and as an "auxiliary policeman," as stated in the Complaint, Edward asserts that he is "simply a mechanic for the [T]own." (*Id.* at 6, 8.) This fact alone, Edward argues, "does not clothe him with sufficient state or local authority to be able to act 'under color of state law.'" (*Id.* at 8.) *See Martinez v. Colon*, 54 F.3d 980, 986 (1st Cir.1995) ("[A] person acts under color of state law 'when he abuses the position given to him by the State.' The key determinant is whether the actor, at the time in question, purposes to act in an official capacity or to exercise official responsibilities pursuant to state

---

avoid "taking the part[ies] by surprise," has also been satisfied. Fed.R.Civ.P. 12 advisory committee's note.

7. 42 U.S.C. § 1983 provides a private right of action for the alleged deprivation of an individual's federal constitutional and statutory rights by persons acting under color of state law.

8. Although the Cardillos do not specifically allege Defendants' violation of 42 U.S.C.

§ 1985(3), Counts I and II of the Cardillos' Complaint refer to "conspiracy" and "conspiratorial actions." (Pls.' Compl. at 4, 7.) This Court therefore treats the Cardillos' Complaint as seeking relief under § 1985(3). Section 1985(3) provides a private right of action for injuries where "two or more persons ... conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws."

law.") (quoting *West v. Atkins,* 487 U.S. 42, 50, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988)). In his affidavit, Edward further states that while he served as a crossing guard from 1974–75, and as a civilian dispatcher for approximately eight months in 1988, he is not now employed by the Johnston Police Department, and denies ever holding himself out as having state or local governmental authority, or exerting influence over any state governmental entity. (E. Cardillo Aff. at 2.) The Cardillos offer no evidence to rebut Edward's contention that he is not employed by the Town of Johnston Police Department. "When a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Thus, there is no material fact at issue with respect to Edward's actual employer.

Second, Edward argues, the Cardillos do not allege facts showing a sufficient connection between the Town and himself, such that he should be held liable as a private individual acting under color of state law. Edward relies upon the First Circuit's decision in *Glaros v. Perse,* 628 F.2d 679 (1st Cir.1980), for the proposition that "[a]lthough it is true that private parties jointly engaged with state or local officials in prohibited conduct can be said to act under color of state law, ... general allegations of cooperation between private individuals and unspecified government agencies" will not do, *id.* at 685. Under *Glaros,* in order to support the existence of a conspiracy between private and state actors, "the relationship or nature of cooperation between the state and a private individual [must] be pled in some detail." *Id.* According to Edward, the Cardillos present no evidence supporting the proposition that a conspiracy existed between

Edward and the Town, and no evidence showing that he conducted himself "in any manner other than as a concerned property and business owner." (Def.'s Mem. Supp. Dismiss at 9.) *See Glaros,* 628 F.2d at 684 (concluding that plaintiff failed to state claim against private individuals under § 1983 where "[n]ot enough was said about the conduct of the defendants ... to distinguish their behavior from that of an ordinary nosey neighbor").

Edward also points to the First Circuit's decision in *Rockwell v. Cape Cod Hosp.,* 26 F.3d 254 (1st Cir.1994), which held that "[i]n order for a private actor to be deemed to have acted under color of state law .... [t]he plaintiff must show that the private entity assumed powers 'traditionally *exclusively* reserved to the State.'" *Id.* at 258 (emphasis in original) (quoting *Rodriques v. Furtado,* 950 F.2d 805, 813 (1st Cir.1991)); *see also id.* at 258–59 (holding that private hospital and private physicians did not act under color of state law in admitting patient against her will, because they did not assume powers traditionally reserved exclusively to State). Edward argues that because he never assumed state power, he should not be held liable under § 1983. (Def.'s Mem. Supp. Mot. Dismiss at 7.)

In response to Edward's assertions that he did not act under the color of state law as required under § 1983, the Cardillos offer no countervailing evidence or case authority. Rather, the Cardillos rely on the allegations raised in the Complaint, which, they insist, support their argument that Edward, in league with the Town, deprived the Cardillos of their rights, property, and liberties. In addition, the Cardillos' Motion in Objection, together with Rudolph's affidavit, throw still more unsupported allegations purporting to show Edward's and the Town's violations of the Cardillos' constitutional rights, in-

cluding: (i) the closing down of Cardillo's, Inc., as a result of Edward's demanding that its business license be revoked; (ii) the appearance of the Johnston police at the home of Rudolph on at least thirty occasions in the past four years (including just a few days before the March 24, 2004 injunction hearing in this case); (iii) the failure of a subpoenaed witness, Johnston Police Chief Richard Tamburini, to appear for a temporary retraining order hearing in Superior Court; and (iv) Rudolph's (hearsay) statement that Edward said that he (Edward) would "use whatever connections and resources he had within the Town of Johnston, to close down [Cardillo's, Inc.]." (R. Cardillo Aff. at 2.) Finally, the Cardillos all but concede their failure to make out a connection between Edward and the police in sufficient detail, admitting that they will have "a very difficult time revealing the smoking gun," and asking this Court to "exercise patience and provide the Plaintiffs an opportunity to expose the systematic and conspiratorial actions of the Defendants." (Pls.' Mem. Obj. Mot. Dismiss at 5.)

When the testimony presented at the injunction hearing is viewed together with the affidavits submitted by both parties prior to the July 8, 2004 hearing under a summary-judgment standard (taking all facts in the light most favorable to the Cardillos), the facts simply do not even remotely suggest that Edward acted under color of state law to deprive the Cardillos of their constitutional rights under § 1983. *See Glaros*, 628 F.2d at 685 (finding that not enough was said about the conduct of the defendants to demonstrate that defendants violated plaintiff's constitutional

rights). *Unsupported* accusations of multiple arrests, business closings, and stolen assets are insufficient to connect Edward to the state pursuant to *Glaros*, and thus, the Cardillos' § 1983 claim must fail.

### 2. The Town's Liability Under § 1983

■ Because the Cardillos do not name any individual police officers in their § 1983 claims, the Town argues that the Cardillos' claims against the Town must fail because Edward was not a state actor. (Town's Mem. Supp. J. Plead. at 5.) *See Evans v. Avery*, 100 F.3d 1033, 1040 (1st Cir.1996) (holding that city could not be held liable absent constitutional violation by its officers). Even if Edward were found to have violated § 1983, the Town argues, the Town would not be liable, absent a showing that Edward's actions were "officially sanctioned or ordered and are a policy by a final decision maker within the municipality." (Town's Mem. Supp. J. Plead. at 7.) *See Glaros*, 628 F.2d at 683 (dismissing plaintiff's § 1983 claim against municipality because plaintiff "did not allege in his complaint any official municipal policy implicating [the city]").

In their objection to the Town's Motion for Judgment on the Pleadings, the Cardillos rely, almost entirely, on the arguments raised in their objection to Edward's Motion to Dismiss. They also place considerable weight on Chief Tamburini's failure to testify and the inference of spoliation thereby created. (Pls.' Mem. Obj. J. Plead. at 4–5, 7.) The Cardillos apparently attempt to overcome the Town's Motion by alleging that more evidence would have come out had the Town been more forthcoming.[9] Whatever the merits of this

---

**9.** As indicated above, Rudolph testified as to what he expected Chief Tamburini would have said if Tamburini had testified. The Cardillos sought no further discovery from Chief Tamburini in order to develop this line

of argument, and they make no further offer of proof as to what he would say in any event. Rather, the Cardillos seem to have decided to focus on Chief Tamburini's non-appearance as the newly-minted centerpiece of their pa-

claim (which are few if any), because the Cardillos are not able to show that an unlawful policy or practice of the Town led to the deprivation of their constitutional rights, the Cardillos' § 1983 claim against the Town must also fail.

### 3. *Edward's and the Town's Liability Under § 1985*

■ Having failed to demonstrate that Edward and the Town were engaged in "systematic and conspiratorial actions," the Cardillos' claims also fail under § 1985(3). In order to state a claim under § 1985(3),

> a plaintiff must allege the existence of (1) a conspiracy, (2) a conspiratorial purpose to deprive a person or class of persons, directly or indirectly, of the equal protection of the laws or of equal privileges and immunities under the laws, (3) an overt act in furtherance of the conspiracy, and (4) either (a) an injury to person or property, or (b) a deprivation of a constitutionally protected right or privilege.

*Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996). In addition, the Supreme Court has made clear that a plaintiff may recover under § 1985(3) "only when the conspiratorial conduct of which he complains is propelled by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" *Id.* (quoting *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971)).

As this Court noted at the injunction hearing, the evidence presented by the Cardillos falls far short of demonstrating that any such conspiracy existed, much less any overt acts in furtherance of a conspiracy that resulted in damages. (Tr. of Hr'g, 3/24/04.) Furthermore, as noted by the Town, the Cardillos do not claim that the alleged conspiratorial conduct was based upon any class-based animus. (Town's Mem. Supp. J. Plead. at 9.) Thus, the Cardillos' claim that the Defendants conspired to deprive them of their constitutional rights under § 1985(3) must also fail.

### B. *The Cardillos' State Law Claims*

Edward does not address the merits of the Cardillos' state law claims, but rather contends that once the § 1983 and § 1985 claims are dismissed, the purely state law claims must also be dismissed for lack of an independent basis of jurisdiction.[10] (Def.'s Mem. Supp. Mot. Dismiss at 11 (citing *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ("Needless decisions of state law should be avoided.... Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.")).) *See Rodriguez v. Doral Mortgage Corp.,* 57 F.3d 1168, 1177 (1st Cir.1995) (recognizing "general principle" that unfavorable disposition of federal claims triggers dismissal of supplemental state law claims). Conversely, the Cardillos argue that this Court should exercise jurisdiction over the state law claims because they form "a separate but parallel ground for relief also sought in connection

thetically weak conspiracy theory. (It should be noted for the record that at the hearing, efforts were made to contact Chief Tamburini and secure his attendance to no avail. Chief Tamburini later visited this writer, with counsel, to personally apologize for his absence. As he explained, he had been off duty that morning when he was called to a tragic and

fatal accident scene on Route 10 in his town—virtually at the same time as the hearing).

**10.** While the Town urges this Court to reach the merits of the Cardillos' state law claims, this Court declines to do so for the reasons discussed below.

with a substantial federal claim." (Pls.' Mem. Obj. J. Plead. at 3 (quoting *Gibbs,* 383 U.S. at 722, 86 S.Ct. 1130).)

██ As this Court recognized at the July 8, 2004 hearing, under 28 U.S.C. § 1367(c), when a district court dismisses all claims over which it has original jurisdiction, the court may, in its discretion, decline to exercise supplemental jurisdiction over the state law claims, or it may "keep the remaining causes of action and decide them." (Tr. of Hr'g, 7/8/04.) In this matter, Case 04–60 has already been remanded to state court, and presumably is again moving toward trial. For efficiency sake, the remaining state law claims in Case 04–27 should be there too. Moreover, it is still early in this case from the standpoint of pleadings and discovery; and, there is certainly no prejudice to either party as a result of this action. Finally, and perhaps most importantly, dismissal of the remaining claims (after resolution of the federal claims) may give the warring family factions here some time to reflect on their actions, and to consider whether this family feud really deserves another round. Based upon the plain language of the supplemental jurisdiction statute, together with the holdings of the Supreme Court and the First Circuit, this Court therefore declines to exercise jurisdiction over the Cardillos' state law claims against the Defendants, and dismisses these claims without prejudice.

## C. *Edward's Request for Attorneys' Fees Under § 1983 and § 1985*

██ Edward argues that in the event that this Court finds against the Cardillos on their § 1983 and § 1985 claims, he is entitled to his "costs of suit and attorneys' fees incurred in defending this action." (Def.'s Mem. Supp. Mot. Dismiss at 12.) This Court has previously held that a pre-

vailing defendant may be awarded reasonable attorneys' fees in a § 1983 (and, by extension, a § 1985) action only if the plaintiff's claims are "frivolous, unreasonable, or without foundation." *Carter v. State of R.I., Dept. of Corr.,* 25 F.Supp.2d 24, 26 (D.R.I.1998) (quoting *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 422, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978) (internal quotations omitted)). Thus, before this Court will award attorneys' fees, it must first determine that the defendant is a prevailing party, that the requested attorneys' fees are reasonable, and that the plaintiff's claim was "frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Christiansburg Garment Co.,* 434 U.S. at 422, 98 S.Ct. 694. Because Edward did not provide this Court with any information regarding the above criteria or an itemization of the specific amounts to which he is entitled (i.e., the amounts incurred by him as a defendant in this case), Edward's request for attorneys' fees and costs in connection with Case 04–27 is denied.

## D. *Edward's Motion for Rule 11 Sanctions*

██ Rule 11(b) of the Federal Rules of Civil Procedure provides, in pertinent part, that "[b]y presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying," among other things,

> that to the best of that person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,
>
> > (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or

needless increase in the cost of litigation; [and]

 (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

Fed.R.Civ.P. 11(b)(1) and (2). According to the First Circuit, "[t]he standard under Rule 11 is an objective one, *i.e.*, 'reasonableness under the circumstances.'" *Ballard's Serv. Ctr., Inc. v. Transue*, 865 F.2d 447, 449 (1st Cir.1989) (quoting Fed. R.Civ.P. 11 advisory committee's note). A showing of bad faith is not required.[11] "Even assuming that the plaintiff (in the guise of its attorney) did not possess, or the evidence was insufficient to infer the existence of, purely subjective bad faith," under Rule 11, the district court may impose attorneys' fees against a party or his attorney for irresponsibly initiating or litigating a cause of action. *Id.*

Edward argues that Rose's and Rudolph's removal of Case 04–60 on the eve of trial, nearly four years after Edward filed his Complaint, violates Rule 11 because it was "simply motivated by an intent to delay or impede [Case 04–60] from reaching trial.... Unhappy with their result in state court, [Rose and Rudolph] now seek to start over in the federal court." (Pl.'s Mem. Supp. Remand at 9–10.) Edward also makes the corollary argument that Rose's and Rudolph's legal contentions for removal are not warranted by existing law or any nonfrivolous argu-

ment for extension thereof in violation of Rule 11.[12]

 1. *Was Rose's and Rudolph's removal of Case 04–60 reasonably warranted by existing law or any nonfrivolous argument for extension thereof under Rule 11?*

In order to determine whether Rose's and Rudolph's removal was reasonably warranted by existing law or any nonfrivolous argument for extension thereof pursuant to Rule 11, an examination of the underlying arguments for and against removal is required.

 a. *Was there a reasonable basis for removal based on Federal Question Jurisdiction?*

Removal of an action to federal court is governed by the removal statute, 28 U.S.C. § 1441, which provides, in relevant part, that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant." Original jurisdiction in the district court exists where there is diversity of citizenship under 28 U.S.C. § 1332, or a federal question is raised pursuant to 28 U.S.C. § 1331. In addition, original jurisdiction under the removal statute arguably includes supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over otherwise non-removable claims that are within the same case or controversy as claims involving diversity of parties or a federal question. *See City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 157, 118 S.Ct. 523, 139 L.Ed.2d 525

---

**11.** The Cardillos argue that because they submitted "a good faith basis for removal," an award of fees and costs is unwarranted. (Def.'s. Mem. Obj. Fees at 3.)

**12.** Under the removal statute, 28 U.S.C. § 1446(a), a notice of removal is signed "pursuant to Rule 11," and is therefore subject to Rule 11 sanctions. While this Court remand-

ed Case 04–60 to the Superior Court as a result of improper removal, this Court nevertheless "retains jurisdiction to consider whether its process was abused during the course of that determination." *Unanue–Casal v. Unanue–Casal*, 898 F.2d 839, 841 (1st Cir. 1990).

(1997) (finding that once case was removed based on federal question jurisdiction, plaintiff's "state law claims were properly before the District Court under the supplemental jurisdiction statute"); Joan Steinman, *Supplemental Jurisdiction in § 1441 Removed Cases: An Unsurveyed Frontier of Congress' Handiwork*, 35 Ariz. L.Rev. 305, 308 (1993) (stating that while 28 U.S.C. § 1367's applicability to removed cases is not a "totally foregone conclusion," the arguments "against its applicability are weak"). In fact, section 1441(c) of the removal statute specifically provides for removal in cases involving multiple claims—both removable and non-removable—so long as at least one of the claims involves a federal question. 28 U.S.C. § 1441(c).[13]

 "A party seeking to remove a case to federal court has the burden of demonstrating the existence of federal jurisdiction." *Brawn v. Coleman*, 167 F.Supp.2d 145, 148 (D.Mass.2001). The removal statute, moreover, "should be strictly construed, and any doubts about the propriety of removal should be resolved against the removal of an action." *Id.* According to the Supreme Court in *Franchise Tax Bd. of Calif. v. Constr. Laborers Vacation Trust for So. Calif.*, 463 U.S. 1, 10, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), where, as here, there is no diversity of citizenship between the parties, and where the propriety of removal therefore rests on a determination of whether the case falls within the original "federal question" jurisdiction of the court, it is the plaintiff's complaint that controls this determination. Edward contends that all of the causes of action raised, and remedies sought, by him in Case 04–60 are "exclu-

sively state court matters," which do not raise a federal question and, therefore, do not confer jurisdiction on the federal district court. (Pl.'s Mem. Supp. Remand at 5.) Therefore, he argues, Rose's and Rudolph's removal was unwarranted by existing law or any nonfrivolous argument for the extension thereof in violation of Rule 11. Rose and Rudolph concede that Case 04–60 was not initially removable pursuant to federal jurisdiction or otherwise, but argue that this case subsequently became removable pursuant to this Court's supplemental jurisdiction. (Defs.' Mem. Obj. Fees at 2.)

b. *Was there a reasonable basis for removal based on supplemental jurisdiction?*

The supplemental jurisdiction statute, 28 U.S.C. § 1367, provides that in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in such action that they form part of the same case or controversy. Rose and Rudolph argue that while not initially removable in 2000, Case 04–60 became removable in 2004, based on the supplemental jurisdiction statute. In their Notice of Removal, filed with this Court on February 25, 2004, Rose and Rudolph stated that the Town's removal of the Cardillos' "companion lawsuit" (Case 04–27) from the Rhode Island Superior Court to this Court on February 25, 2004, rendered Case 04–60 removable because "the subject matter, parties and issues presented in the 'Initial lawsuit' [Case 04–60] and the 'Companion lawsuit' [Case 04–27] are substantially similar." (Notice of Removal at 2.) According

---

**13.** The exercise of supplemental jurisdiction under 28 U.S.C. § 1441(c) is within the district court's discretion. The court may, for instance, choose not to exercise jurisdiction

where, according to § 1441(c), "State law predominates" over the claims over which the court has original jurisdiction.

to Rose and Rudolph, federal jurisdiction over Case 04–60 was therefore proper "pursuant to 28 U.S.C. sec. 1441 et seq. [the removal statute] and supplemental jurisdiction and ancillary jurisdiction over the pendant state law claims pursuant to 28 U.S.C. sec. 1367." (*Id.*) In a subsequent brief in opposition to Edward's Motion for sanctions, filed with this Court on October 13, 2004, Rose and Rudolph reiterated their arguments that the removal of Case 04–60 was proper based upon this Court's "supplemental and pendant jurisdiction," insofar as all of the claims "are so related that they form 'part of the same case or controversy.'" (Defs.' Mem. Obj. Fees at 2.)

Edward argues that even if the supplemental jurisdiction statute provides an independent basis for removal of a purely state action, the allegations raised by the Cardillos in Case 04–27 were "entirely different" from those raised by him in Case 04–60, and are therefore insufficient to establish supplemental jurisdiction. (Pl.'s Mem. Supp. Remand at 6.) Edward contends that in Case 04–27, the Cardillos allege that he conspired with the Town to violate the Cardillos' constitutional rights, and also allege several state law claims, including false arrest and imprisonment, trespass, assault, slander, and libel. (*Id.* at 5–6.) These causes of action are a far cry from Edward's allegations in Case 04–60 of breach of a fiduciary duty, fraud, deceit, and torts of nondisclosure and conspiracy under state law. (*Id.* at 5.) According to Edward, Rose's and Rudolph's reliance upon the supplemental jurisdiction statute was therefore misplaced, rendering

removal unreasonable and in violation of Rule 11. This Court agrees that Rose's and Rudolph's claims asserting violations of constitutional rights and state tort law in Case 04–27 derive from a very different factual nucleus than the claims raised by Edward in his action for an accounting of his uncle's assets and partition of real property in Case 04–60. Thus, the cases do not "comprise[ ] but one constitutional 'case'," *Gibbs*, 383 U.S. at 725, 86 S.Ct. 1130, for purposes of supplemental jurisdiction.

Nevertheless, assuming, arguendo, that Cases 04–27 and 04–60 were part of the "same case or controversy" under 28 U.S.C. § 1367, it is clear that the supplemental jurisdiction statute still does not provide a basis for Rose's and Rudolph's removal of Case 04–60. At the July 8, 2004 hearing at which this Court ordered remand of Case 04–60, this Court recognized that, notwithstanding the fact that both cases might share the same parties, facts, and witnesses were they to proceed to trial, "removal is controlled very specifically by federal statute," and that Rose and Rudolph "don't get to come to federal court just because [they] think it would be nice to try them together." (Tr. of Hr'g, 7/8/04.)[14] As discussed above, before a case can be removed, the removal statute requires that the district court have either original jurisdiction over the entire action or original jurisdiction over a claim within the action, together with supplemental jurisdiction over attendant and otherwise non-removable claims. Rose's and Rudolph's argument is based, therefore, on the (incorrect) assumption that because

---

**14.** Whether or not Cases 04–27 and 04–60 ought to be consolidated, as Rose and Rudolph argue, has no bearing on removal. Fed.R.Civ.P. 42 provides for the consolidation of actions involving a common question of law or fact that are pending before the court—not the removal of those cases. *Cf.*

*B.B. Weit Printing Co. v. Frances Denney, Inc.,* 300 F.Supp. 405, 409 (S.D.N.Y.1969) (granting motion to consolidate actions arising out of the same transaction after party 1 sued party 2 in district court, party 2 sued party 1 in state court, and party 1 *properly* removed case to district court).

the district court has original jurisdiction over claims brought by them as plaintiffs in Case 04–27, Edward's somewhat related claims in an entirely separate civil action, Case 04–60, are somehow removable. But Rose and Rudolph provide no support for this assumption, and none can be found. In fact, based upon this Court's own exhaustive research (since Rose and Rudolph provided no authority), there does not appear to be any legal authority whatsoever for the proposition that a defendant may remove a case based solely on a separate claim brought as the plaintiff in a separate action. On the contrary, the vast weight of legal authority suggests the opposite.

In the first place, it is not at all clear that the supplemental jurisdiction statute constitutes an independent source of jurisdiction for removal. Several district courts have held that an already-existing federal action cannot provide a mechanism for removal of a separate state court action; rather, a state court action can be removed only to the extent that it includes diverse parties or a federal claim over which the district court has original jurisdiction. *See In re Estate of Tabas,* 879 F.Supp. 464, 467 (E.D.Pa.1995); *see also Stern v. Mut. Life Ins. Co. of N.Y.,* 968 F.Supp. 637, 638 (N.D.Ala.1997) (holding that supplemental jurisdiction statute did not provide jurisdiction over removed case where complete diversity was lacking and no federal question was asserted; case could not be brought in, or removed to, federal court on grounds of supplemental jurisdiction alone). Similarly, the Supreme Court has determined that a state law claim may be removed to federal court through the use of the supplemental jurisdiction statute, "provided that another claim *in the complaint* is removable." *Beneficial Nat'l Bank v. Anderson,* 539 U.S. 1, 8 n. 3, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003) (emphasis added); *see also City of Chicago,* 522 U.S. at 165, 118 S.Ct. 523.

Although the First Circuit has not addressed this issue directly, the cases in which the First Circuit has analyzed removal pursuant to the supplemental jurisdiction statute have consistently involved the existence of federal question jurisdiction over one or more claims and supplemental jurisdiction over the remaining state law claims. *See, e.g., Grispino v. New England Mut. Life Ins. Co.,* 358 F.3d 16, 19 (1st Cir.2004); *Nogueras–Cartagena v. Rosello–Gonzalez,* 182 F.R.D. 380, 383 (D.P.R.1998) (holding that removal of case was proper where court had subject matter jurisdiction over plaintiff's federal claims pursuant to federal question statute, 28 U.S.C. § 1331, and supplemental jurisdiction over plaintiff's concomitant state law claims pursuant to 28 U.S.C. § 1367(a)); *D'Allesandro v. Johnson & Wales Univ.,* No. CIV. 94–543–SD, 1995 WL 30604, at *3–4 (D.N.H. Jan.23, 1995) (same).

The removal of Case 04–60 based solely on supplemental jurisdiction would also be inconsistent with the First Circuit's treatment of counterclaims as the basis for removal. Although courts differ with respect to this issue, the First Circuit has held that a defendant's counterclaim cannot form the basis for removal. *Watch Hill Partners, Inc. v. Barthel,* 338 F.Supp.2d 306, 309 (D.R.I.2004) (Smith, J.) (citing *Transue,* 865 F.2d at 449). It is, therefore, difficult to see why Rose's and Rudolph's separate claims in a separate action (Case 04–27)—which, they concede, are identical to their attempted counterclaims in Case 04–60 (Tr. of Hr'g, 7/8/04)— should form the basis for removal, nearly four years too late. Furthermore, it is well settled that it is the defendant, not the plaintiff, who is entitled to remove an action. *Transue,* 865 F.2d at 449. Rose's and Rudolph's removal of Case 04–60 based on claims that they brought as plain-

tiffs in a separate action is inconsistent with this principle as well. In *Transue,* in which the plaintiff sought to remove an action, alleging that the defendant had raised federal claims in his counterclaim, the district court rejected what it characterized as the plaintiff's attempt to "boostrap the case into federal court by usurping the defendant's right to determine what claim he would raise." *Id.* at 447. Because Rose and Rudolph base their removal of Case 04–60 on claims they raised as plaintiffs in Case 04–27, and because Edward accuses Rose and Rudolph of attempting, in effect, to "bootstrap" their failed counterclaim into federal court, the district court's reasoning in favor of an award of attorneys' fees in *Transue* is instructive:

> The Plaintiff here, the party who removed, seeks to amend the Defendant's ... counterclaim in the state court by making it read as a federal claim rather than as a state claim. That is not the Plaintiff's province. Quite clearly, the claim was made under state law. The Plaintiff here has no supervisory jurisdiction over what kind of a claim the Defendant here can make in the state court. It's for the Defendant to make that decision, not the Plaintiff. The Defendant made that decision. Whether or not a state claim was a good claim in state court was a question for the state court to determine, and it's not up to the party against whom the claim is made to establish a characterization of that claim as a federal claim. And with that bootstrapping remove the case to this court.

Furthermore, the record shows that the removal was not timely.

*Id.* at 448. Because a separate action does not create an independent basis for removal under the supplemental jurisdiction statute, the Cardillos' removal of Case 04–60 was unreasonable.

> ### c. *Was Rose's and Rudolph's removal timely?*

■ Under 28 U.S.C. § 1446, a defendant must file a notice of removal within thirty days of receipt of the plaintiff's summons and complaint, or within thirty days of receipt of such "other paper" from which it may first be ascertained that the case has become removable. In *Unanue–Casal,* the First Circuit upheld the district court's imposition of sanctions under Rule 11, where the defendant filed for the removal of a New Jersey state case to a clearly improper forum—the District Court of Puerto Rico—and did so "at the eve of trial [three days prior to trial in state court], many months after the state court suit began." 898 F.2d at 842. The defendant's improper removal, the court noted, "tended to undermine the goals that Rule 11 seeks to advance." *Id.;*[15] *see also Transue,* 865 F.2d at 450 (awarding attorneys' fees where plaintiff improperly sought to remove case based on defendant's counterclaim, and where plaintiff's removal was not timely).

Rose and Rudolph do not dispute that they filed their Notice of Removal nearly four years after Edward filed his Complaint in May of 2000, and that Edward's allegations in the Complaint therefore can-

---

**15.** After attempting to remove the case to the District Court of Puerto Rico, the defendant in *Unanue–Casal* removed the case to the District Court of New Jersey, which remanded the case, finding that it lacked subject matter jurisdiction and that the notice of removal was untimely. *Unanue–Casal v. Unanue–Casal,* No. 89–2887 (D.N.J. Nov. 24, 1989) (unpublished opinion), *available at* appendix to 898 F.2d 839, 847 (hereinafter, *"Unanue–Casal,* app."). The District Court of New Jersey, like the District Court of Puerto Rico, also imposed sanctions under Rule 11, awarding $16,011.15 in attorneys' fees to plaintiff. *Unanue–Casal,* app., 898 F.2d at 847–49.

not form the basis for their February 25, 2004 removal of Case 04–60. As discussed above, Rose and Rudolph instead base their removal of Case 04–60 on the removal of an entirely separate case, Case 04–27, which they brought as plaintiffs in state court on December 18, 2003. They argue that Case 04–60 became removable, and the thirty-day limitations period began running, when Case 04–27 was removed by the Town on February 2, 2004. (Defs.' Mem. Obj. Fees at 2.) As set forth above, this is a position that lacks any support in the law. Because the removal of Case 04–27 did not make Case 04–60 removable pursuant to the supplemental jurisdiction statute, Case 04–27 simply has nothing to do with the timing of Rose's and Rudolph's removal of Case 04–60. The thirty-day limitations period thus began running upon Edward's filing of his Complaint in May 2000—not upon the Cardillos' filing their Complaint in Case 04–27 in December 2003, or the Town's removal of that case in February 2004. Rose's and Rudolph's removal was therefore not timely, and thus not reasonably filed.

### 2. *Was Rose's and Rudolph's removal motivated by an improper purpose?*

In *Unanue-Casal,* where the defendant attempted to improperly remove a case from New Jersey state court to the District Court of Puerto Rico, the First Circuit upheld the imposition of Rule 11 sanctions, stating that it "[could not] imagine any legal justification, nor [could it] find one in the briefs or in the record," for removing the case to Puerto Rico's federal court. 898 F.2d at 842. "On the contrary . . . there is good reason to believe that [the plaintiff] filed the removal petitions for 'an improper purpose,' namely, to harass, or to delay the start of the New Jersey trial." *Id.* In support of its holding, the First Circuit noted that the defendant filed on the eve of trial, many months

after the state suit began, and that the defendant brought separate actions in other courts (including two actions in the local courts of Puerto Rico) asking for the same relief as in his counterclaims in the New Jersey action, and then attempted to remove those actions as well. *See id.* at 842, 847; *see also Transue,* 865 F.2d at 450 (awarding attorneys' fees where plaintiff attempted to remove case based on defendants' counterclaim, finding that plaintiff's attorney "should bear the consequences of his unreasonable, ill-founded legal maneuver, which only served to irresponsibly prolong litigation and incur further expense for the opposing side").

Edward argues that Rose's and Rudolph's removal of Case 04–60 without any independent basis for jurisdiction, several years after he filed his claim and just a few months prior to the start of trial in Superior Court, was motivated by an improper purpose. Edward alleges that Rose and Rudolph are in effect trying to bootstrap their attempted counterclaim in Case 04–60 (which was rejected by the state court) to the previously removed Case 04–27 "based upon their unhappiness with the status of the court proceedings in [Case 04–60]." (Pl.'s Mem. Supp. Remand at 8.) Where trial was set to begin in state court on May 17, 2004, Edward further contends that Rose and Rudolph filed the Notice of Removal on February 24, 2004 "in an effort to prevent the plaintiff from having his day in court and otherwise to delay and impede the[ ] proceedings." (*Id.* at 9.)

As discussed above, Rose's and Rudolph's jurisdictional basis for removal was sorely lacking, and they provided absolutely no authority for their contention that the removal of Case 04–27 gave this Court jurisdiction over Case 04–60. This, combined with Rose's and Rudolph's untimely filing and disruption to the state court proceedings, leaves this Court, unfortu-

nately, with no reasonable alternative other than to conclude that Rose's and Rudolph's removal was motivated, at least in part, by an improper purpose, and that attorneys' fees are therefore warranted. As the District Court of New Jersey stated in *Unanue–Casal*, "either [the plaintiff] and his attorneys did not perform a reasonable investigation of the facts and a normally competent level of legal research or they were motivated by the intention to deliberately delay and harass their opponents." *Unanue–Casal*, app., 898 F.2d at 847. In either case, Rule 11 sanctions may and should be imposed.

3. *Does Edward's technical noncompliance with Rule 11's "safe harbor" provision prevent this Court from awarding attorneys' fees?*

Rule 11 requires that a motion for sanctions be made separately from other motions and requests, and provides for a twenty-one-day "safe harbor" in which the defendant may cure the alleged violation. Fed.R.Civ.P. 11(c)(1)(A). Because a separate Rule 11 motion was not brought by Edward until after the July 8, 2004 hearing, at which this Court ordered remand of Case 04–60, Rose and Rudolph technically did not have an opportunity to cure. They argue that the Motion is therefore fatally flawed and should be denied. (Defs.'

Mem. Obj. Fees at 3.) However, it is important to note that on or about March 25, 2004, Rose and Rudolph were served with Edward's Motion to Remand and Objection to Defendant's Removal, which included a request for Rule 11 sanctions (in the memorandum accompanying the Motion), and a hearing on this Motion (together with other motions) was not held until July 8, 2004—arguably plenty of time for Rose and Rudolph to cure the alleged violation. This Court finds Edward's technical noncompliance with Rule 11 therefore does not bar his request for relief. *See Barker v. Bank One, Lexington, N.A.*, No. 97–5787, 1998 WL 466437, at *2 (6th Cir. July 30, 1998) (unpublished opinion) (holding that Rule 11's safe-harbor provision was satisfied where counsel for defendants warned plaintiff's counsel in writing that they would seek sanctions for filing frivolous action, even though defendants' counsel did not serve motion for sanctions on plaintiff's counsel or file motion with court until after final judgment was entered); *see also Nisenbaum v. Milwaukee County*, 333 F.3d 804, 808 (7th Cir.2003) (technical noncompliance with safe-harbor provision not a bar to Rule 11 sanctions); *Walsh v. Mass. Bd. of Bar Exam'rs*, No. CIV.A. 01–30166–MAP, 2002 WL 561024, at *2 (D.Mass. Apr.9, 2002) (same).[16]

**16.** Even if Edward's technical noncompliance with Rule 11's safe-harbor provision were fatal to his Motion for Award of Attorneys' Fees, Rule 11 authorizes this Court to impose sanctions against the Cardillos on its own initiative. Under Rule 11(c)(1)(B), this Court may enter an order describing the conduct in question, and direct an attorney or party to show cause why it did not violate Rule 11. The July 8, 2004 hearing reasonably satisfied this requirement insofar as it provided the Cardillos with notice that Rule 11 sanctions were being considered and an opportunity to respond. Because this Court concludes that Rose and Rudolph violated Rule 11, a monetary sanction (paid to this Court) would therefore be justified under the Rule. Furthermore,

even if Edward were not entitled to Rule 11 sanctions either by Motion or by order of this Court, he is nevertheless entitled to the payment of "just costs and any actual expenses, including attorney fees, incurred as a result of the removal," pursuant to 28 U.S.C. § 1447(c). "[S]ection 1447(c) constitutes an alternative means to reimburse the victorious party without resorting to Rule 11." *Wisconsin v. Hotline Indus., Inc.*, 236 F.3d 363, 367 (7th Cir.2000); *see also Samuel v. Langham*, 780 F.Supp. 424, 428 (N.D.Tex.1992) (holding that improper removal for lack of federal question jurisdiction did not justify Rule 11 sanctions, but warranted just costs and actual expenses, including attorneys' fees, incurred

#### 4. *Who should pay?*

Rule 11 provides that monetary sanctions may not be awarded against a represented party where the court determines that the party's allegations are not warranted by existing law or any nonfrivolous argument for the extension thereof. Fed.R.Civ.P. 11(c)(2)(A). According to the Advisory Committee Notes, monetary responsibilities for frivolous contentions of law are "more properly placed solely on the party's attorneys." Fed.R.Civ.P. 11 advisory committee's note. The Advisory Committee Notes further provide that "[t]he person signing, filing, submitting, or advocating a document has a nondelegable responsibility to the court, and in most situations is the person to be sanctioned for a violation." *Id.* Accordingly, and in the interest of "effective deterrence" against similar activity by other litigants, Fed.R.Civ.P. 11(c)(2), this Court holds that the attorneys representing Rose and Rudolph in connection with Case 04–60 [17] shall pay to Edward, as sanctions, attorneys' fees in the amount of $2400 incurred by Edward in defending Rose's and Rudolph's Motion to Consolidate and filing a Motion to Remand. (*See* Carroll Aff. ¶ 6; Robinson Aff. ¶ 6.)

#### IV. *Conclusion*

For the foregoing reasons, this Court holds as follows:

1. With respect to Case 04–27, Edward's and the Town's Motions for Summary Judgment are GRANTED with prejudice as to the Cardillos' federal claims, and without prejudice as to the Cardillos' state law claims. Edward's request for attorneys' fees and costs in connection with Case 04–27 is DENIED.

2. With respect to Case 04–60, Edward's Motion for Reconsideration and Award of Attorneys' Fees Pursuant to Rule 11 is GRANTED.

IT IS SO ORDERED.

---

by plaintiff as result of removal, pursuant to § 1447(c)). Thus, although this Court finds it unnecessary to do so, it could, if need be, construe Edward's Motion as one for costs and expenses and award the same to him.

**17.** Rose and Rudolph are represented by attorneys Frank Saccoccio and Edward R. Dipippo, respectively, in Case 04–60. A different set of attorneys represents Rose and Rudolph in Case 04–27. The Rule 11 sanctions imposed herein pertain only to the filings in Case 04–60.